IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jeremy Washington, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) Case No. 3:22-cv-50214 |
| v. | ) |
| | ) Magistrate Judge Lisa A. Jensen |
| Mariel Kester, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**REPORT AND RECOMMENDATION**

For the reasons stated below, it is this Court's report and recommendation that Defendants' request for dismissal of the complaint for failure to exhaust administrative remedies be granted and that Plaintiff's claims be dismissed without prejudice. Any objection to this report and recommendation must be filed by August 8, 2023. *See* Fed. R. Civ. P. 72(b). The failure to file a timely objection may result in the waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-61 (7th Cir. 1989).

**I. Background**

On June 20, 2022, Plaintiff Jeremy Washington, then a prisoner at Dixon Correction Center (Dixon),[1] filed a complaint pursuant to 42 U.S.C. § 1983, alleging that Nurse Mariel Kester, Nurse Kandice Denning, Correctional Officer Alexander Mitchell-Silva, Correctional Officer J. Lahman, and Correctional Lieutenant Newman (Defendants) were deliberately indifferent to his serious medical condition and failed to intervene to provide him medical attention. Compl. ¶¶ 17–26, Dkt. 1. Specifically, Plaintiff alleges that on June 20, 2020, Defendants were aware that he was suffering

---

[1] Plaintiff is no longer at Dixon but remains in the custody of the Illinois Department of Corrections.

1

from a seizure in his cell and left him to suffer in his cell rather than provide medical attention. *Id.* ¶¶ 10, 12–15.

Defendants answered the complaint and raised the affirmative defense that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Dkt. 16. Defendants filed a brief in support of dismissal, Dkt. 36, and Plaintiff filed a brief in opposition, Dkt. 37. On June 8, 2023, the Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). At the hearing, the parties stipulated to the admission of Defendants' Exhibits 1–4 and Plaintiff's Exhibits 1–9, Dkts. 40–53, and called two witnesses: Administrative Review Board (ARB) Chairperson Ryan Kilduff and Plaintiff.

## II. Legal Standard

The Prison Litigation Reform Act (PLRA) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory, and "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). "Grievances are intended to '[allow prisons] to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record.'" *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). "The exhaustion requirement's primary purpose is to alert [] the state to the problem and invit[e] corrective action." *Turley v. Rednour*, 729 F. 3d 645, 649 (7th Cir. 2013) (internal quotation marks and citation omitted).

To exhaust administrative remedies, a prisoner must use "all steps that the agency holds out" and must "do[] so *properly* (so that the agency addresses the issues on the merits)." *Woodford*

2

*v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Because Plaintiff is housed in an Illinois Department of Corrections (IDOC) facility, he must abide by the grievance procedures established by Illinois law, codified in 20 Ill. Admin. Code §§ 504.800, *et seq*. Under those provisions, a prisoner must submit a grievance to his institutional counselor "within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810(a).

If the institutional counselor does not informally resolve the grievance, the grievance officer reviews the grievance, provides a written response to the prisoner, and sends written findings and recommendations to the chief administrative officer (CAO) (typically the warden). *Id.* § 504.830(a), (e). The CAO then sends a written decision to the prisoner. *Id.* § 504.830(e). If, after the CAO responds, the prisoner is still dissatisfied, he may appeal in writing to the IDOC director or the director's designees on the ARB. *Id.* § 504.850(a). The written appeal must be received by the ARB within 30 days after the date of the CAO's decision and should attach copies of the grievance officer's report and the CAO's decision. *Id.* § 504.850(a). The ARB will review the grievance, may schedule a hearing if necessary, and will submit a written report of its findings and recommendations to the IDOC director. *Id.* § 504.850(c)–(d). The final step is for the IDOC director to review the ARB's findings and recommendations and make a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* § 504.850(e). The prisoner shall be sent a copy of the IDOC director's decision. *Id.* § 504.850(e).

A prisoner may also request that a grievance be handled as an emergency by sending it directly to the CAO. *Id.* § 504.840. If the CAO determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender, the grievance shall

be handled on an emergency basis." *Id.* If the CAO determines that the grievance should not be handled on an emergency basis, the prisoner is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id*. § 504.840(c).

Strict adherence to the exhaustion requirements is required. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* (citations omitted).

Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. The burden, therefore, is on Defendants to prove by a preponderance of the evidence that an administrative remedy was available to Plaintiff and that Plaintiff failed to exhaust that remedy. *See Hebron v. Baldwin*, No. 17-cv-6254, 2020 WL 757900, at *1 (N.D. Ill. Feb. 14, 2020).

### III. Discussion

Defendants argue that Plaintiff did not exhaust his administrative remedies because after Plaintiff's grievance related to the claims in this case was not allowed to proceed on an emergency basis and was returned to him, Plaintiff failed to complete the standard grievance process as required.

**A. Evidence at the Hearing**

On July 8, 2020, Plaintiff submitted an emergency grievance (Grievance 3785) relating to the denial of medical treatment when he suffered a seizure in his cell on June 20, 2020. Def. Ex. 2, at 2. On July 14, 2020, the CAO determined that Grievance 3785 was not an emergency and returned the grievance to Plaintiff with instructions to submit the grievance according to the standard grievance procedure. Grievance 3785 was then returned to Plaintiff.

4

Plaintiff appealed Grievance 3785 directly to the ARB. On September 24, 2020, the ARB filled out a return of grievance form for Grievance 3785 stating that Plaintiff failed to provide responses from his counselor, the grievance officer, and the CAO. ARB Chairperson Kilduff testified that based on his review of Grievance 3785 and the ARB's response, the grievance was returned to Plaintiff for additional documentation and was not a ruling by the ARB on Plaintiff's grievance.

Mr. Kilduff also testified that Dixon's grievance log for Plaintiff showed that it received another grievance from Plaintiff on July 17, 2020 (Grievance 3858) relating to a seizure.[2] Def. Ex. 3. Dixon's grievance log also shows that Grievance 3858 was returned by his counselor on August 27, 2020; received by the grievance office on August 31, 2020; the "Disposition" was "DENIED;" signed by the CAO on October 22, 2020; returned to Plaintiff on October 23, 2020. *Id.* Mr. Kilduff testified that the ARB's grievance log for Plaintiff shows that Grievance 3858 was not received by the ARB.

Plaintiff testified that he had an eleventh-grade education and had been diagnosed with attention deficit hyperactivity disorder, schizoaffective disorder, and bipolar disorder. Plaintiff also testified that he was familiar with each step of the grievance process at Dixon and has filed approximately 12 grievances while incarcerated with the IDOC. Plaintiff specifically testified to 8 grievances he filed between January 2020 and July 2021, which he appealed to the ARB.

Plaintiff testified that after receiving Grievance 3785 from the CAO with instructions to complete the standard grievance procedure, he submitted the original copy directly to the ARB.

---

[2] The parties have not produced a copy of Grievance 3858. Dixon's grievance log shows that for Grievance 3858 the "Grv Issue" was "STAFF CONDUCT-UNNAMED; MEDICAL TREATMENT-SEIZURE (CHIPPED TOOTH, BRUISED HEAD, BLOODY EYE); MARKED ADA." Def. Ex. 3.

5

Plaintiff explained that he wanted to notify the ARB that the CAO had deemed Grievance 3785 relating to the treatment of his seizure not to be an emergency.

Plaintiff also copied the information from Grievance 3785 onto a new grievance form and submitted this grievance to his counselor (Grievance 3858).[3] Plaintiff explained that when he previously received a grievance that was deemed not an emergency, his counselor instructed him to submit a new grievance on the issue. Plaintiff also explained that he submitted his grievance directly to his counselor because his housing unit did not utilize a grievance box.

Plaintiff, however, testified that he never received a response to Grievance 3858 while he was at Dixon (until October 2021). Plaintiff testified that after he waited a while without getting a response, he kept asking his counselor, whose name he could not remember, where his grievance was.[4] Accordingly, Plaintiff testified that while he understood that the final step in the grievance process was to appeal to the ARB before filing a lawsuit, he was unsure how to proceed when he did not receive a response back to his grievance.

Plaintiff testified that Dixon had a history of not processing grievances, noting that Dixon similarly lost another grievance he filed in February 2020. Plaintiff explained that he submitted a grievance to his counselor on February 18 or 19, 2020 and after waiting more than 60 days with no response, in May 2020, he filed two grievances to follow up on his missing grievance. Plaintiff appealed both grievances to the ARB, which sent Plaintiff a response stating that Dixon had no record of the February 2020 grievance. Pl.'s Ex. 2.

Plaintiff also testified to several other grievances where he was dissatisfied with the outcome, accusing Dixon of not properly investigating and covering up the issues he was grieving.

---

[3] The parties do not dispute that Grievance 3858 was the second grievance Plaintiff submitted relating to his seizure on June 20, 2020.
[4] Plaintiff did not testify to his counselor's response.

Plaintiff noted that that he had never been interviewed by the grievance officer, the CAO, or ARB regarding any grievance he has submitted.

**B. Analysis**

Plaintiff does not argue that he exhausted his administrative remedies in this case. Instead, Plaintiff argues that administrative remedies were not available to him under the PLRA because: (1) Grievance 3858 was never returned to him; (2) the grievance procedure was an administrative dead end; and (3) the grievance procedure was not clear enough for Plaintiff to understand. The Court will address each argument in turn.

**1. Failure to Return Grievance 3858**

Plaintiff testified that after receiving Grievance 3785 from the CAO with instructions to complete the standard grievance procedure, he submitted Grievance 3858 to his counselor but never received a response. Plaintiff acknowledges that Dixon's grievance log shows that Grievance 3858 was denied by the grievance officer, signed by the CAO, and returned to Plaintiff but argues that "[i]t cannot just be assumed that the Chief Administrative Officer adopted the Grievance Officer's recommendation and properly advised [Plaintiff] of the Chief Administrative Officer's decision." Pl.'s Br. at 4, Dkt. 37. Accordingly, Plaintiff relies on Seventh Circuit precedent holding that an administrative "remedy becomes unavailable if prison employees do not respond to a properly filed grievance." *Dole*, 438 F.3d at 809 (internal quotation marks and citations omitted).

Defendants have submitted a grievance log showing that Plaintiff received a response to Grievance 3858. Without a copy of Grievance 3858, Plaintiff relies on the very same log to show that he submitted a second, non-emergency grievance, relating to his seizure through the normal grievance process as instructed. Pl.'s Br. at 3, Dkt. 37. Yet, without explanation, Plaintiff asks this Court to ignore the remainder of the log showing that Grievance 3858 was denied, then signed by

7

the CAO, and returned to Plaintiff in October 2020. In doing so, Plaintiff seeks to credit the grievance log to the extent it corroborates his testimony that he submitted a second grievance but discredit the entries showing that he failed to exhaust his administrative remedies. In weighing the documentary evidence against Plaintiff's testimony, this Court declines to reach this conclusion. This Court finds that Plaintiff's testimony that he never received a response lacks credibility and as a result is unsupportive of Plaintiff's position. *See Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) ("At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility."). The Court makes this finding based on Plaintiff's demeanor, the lack of detail in his testimony, and the fact that it is directly contradicted by the grievance log. *See Davis v. Francis*, No. 07-CV-0693-MJR, 2009 WL 4894593, at *2 (S.D. Ill. Dec. 11, 2009) ("[P]laintiff's demeanor and the detailed way in which he testified were indicative of truthfulness.").

Plaintiff testified that he never received a response to Grievance 3858 but provides very few details surrounding the submission of his grievance. Plaintiff testified that he submitted Grievance 3858 directly to his counselor and after waiting an unidentified amount of time he followed up with his counselor. Despite testifying that he handed his grievance directly to his counselor, he could not recall his counselor's name. Plaintiff also did not testify to the amount of time he waited for a response before following up with his counselor, how many times he followed up with his counselor, or his counselor's response to his inquiries. By contrast, when testifying to his February 2020 missing grievance, Plaintiff was able to provide specific details about that grievance, including a two-day window when he submitted it, and that he waited more than 60 days for a response before submitting two grievances, which he pursued all the way to the ARB when he was trying to determine what happened to his missing grievance. Plaintiff also testified in detail about several other grievances that Dixon accurately tracked and returned to him, which

8

are reflected in Dixon's grievance log. In weighing Plaintiff's testimony, this Court finds that it lacks indicia of credibility to overcome the grievance log entry showing that Plaintiff received a response to Grievance 3858 in October 2020. *See Sangathit v. Jones*, No. 19-CV-860-DWD, 2021 WL 2822897, at *5 (S.D. Ill. July 7, 2021) (finding an inmate's testimony alone was insufficient to show that prison officials "conspired to prevent him from filing grievances as to the allegations in this case but not to prevent grievances as to unrelated claims"). Accordingly, the Court finds by a preponderance of the evidence that Grievance 3858 was returned to Plaintiff, and he failed to exhaust his administrative remedies by not appealing Grievance 3858 to the ARB as required. *See* 20 Ill. Admin. Code § 504.850(a).

Even crediting Plaintiff's testimony that he did not receive a response will not change the result. Despite the lack of a response, Plaintiff could not "simply sit on his hands and abandon the grievance process when he receives no response." *See Salley v. Parker*, 18-CV-5700, 2020 WL 4736412, at *9 (N.D. Ill. Aug. 14, 2020). "[A]n inmate may not proceed directly to the courts when he does not receive an immediate response to his grievance; ... he must follow up with prison authorities, especially if he is familiar with the grievance process and knows to expect a response within a certain time frame." *Figueroa v. Corr. Officer Mason*, 14 C 9238, 2016 WL 5477528, at *3 (N.D. Ill. Sept. 29, 2016) (internal quotation marks and citation omitted).

Under the IDOC's grievance procedures, a grievance officer generally has two months in which to investigate and return an inmate's grievance. *See* 20 Ill. Admin. Code § 504.830(e) ("The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the written grievance, when reasonably feasible under the circumstances."). Plaintiff testified that he previously submitted several grievances and understood the grievance process. Plaintiff also

testified that before following up on his February 2020 missing grievance, he waited at least 60 days before filing two more grievances to follow up. Plaintiff offers no such details surrounding his efforts to follow up on Grievance 3858, before or after the 60 days passed. Instead, Plaintiff testified only that after waiting a while, he asked his counselor where his grievance was and then filed the instant suit in June 2022. Accordingly, this Court finds that even if Plaintiff did not receive a response to his grievance, he abandoned the grievance process and failed to exhaust his administrative remedies.

### 2. Administrative Dead End

Plaintiff argues that the grievance procedure was unavailable to him because it was an administrative dead end and that the procedure consistently worked to avoid addressing his grievances. In support, Plaintiff cites several grievances from January 2020 through July 2021 where he believes Dixon and the ARB either ignored or improperly investigated his grievances. Pl.'s Exs. 1–7.

The Supreme Court has explained that "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. A process is not an administrative dead end, however, when it offers "the possibility of some relief." *Id.*; *see Dole*, 438 F.3d at 809 ("[S]o long as the administrative authority has the ability to take *some* action in response to the complaint (even if not the requested action), an administrative remedy is still 'available' under the PLRA.") (emphasis in original) (citation omitted).

Here, Plaintiff is not arguing that officials were unable or consistently unwilling to provide any relief. Instead, Plaintiff disagrees with the ultimate determination on his grievances. Plaintiff

10

testified that he disagreed with Dixon's findings on several occasions that video footage did not support his allegations, noting that the ARB did not independently review the video footage and he was never interviewed by Dixon or the ARB regarding any of his grievances. While the ARB has the authority to act on appeals by requesting video footage or interviewing witnesses, it is not required to do so to resolve an appeal. Moreover, Plaintiff's grievances show that the ARB referred three of his appeals to Internal Affairs for further investigation, including one grievance where internal affairs reviewed the video footage and found no violations. Pl.'s Exs. 1, 3, 6. Without more, this Court cannot excuse a failure to exhaust administrative remedies simply because Plaintiff assumes the attempt would have been unsuccessful. *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) ("No one can *know* whether administrative requests will be futile; the only way to find out is to try.") (emphasis in original). Plaintiff was required to afford Dixon and the ARB the opportunity to act. Based on the evidence presented, the Court finds by a preponderance of the evidence that officials at Dixon and the ARB were neither "unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643.

### 3. Clarity of the Process

Finally, Plaintiff argues that the availability of administrative remedies must account for an inmate's individual capabilities, arguing that "Defendants have not carried their burden of showing that the administrative process was clear enough to be available to Mr. Washington, who has been classified mentally ill." Pl. Br. at 10, Dkt. 37. Specifically, Plaintiff argues that it was unclear that he could not appeal directly to the ARB after the CAO determined his grievance was not an emergency.

In *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 832 (7th Cir. 2020), the Seventh Circuit found that before April 1, 2017, the IDOC's grievance procedures did not expressly address

11

what should happen if the CAO determines that a grievance does not present an emergency. Accordingly, *Williams* found that before April 1, 2017, the prison could not require an inmate to resubmit the grievance under the normal grievance process in order to exhaust. However, on April 1, 2017, the Illinois Administrative Code was amended and now provides: "If the Chief Administrative Officer determines that the grievance should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code § 504.840(c). Accordingly, *Williams* stated that following this amendment "it would be clear that [the plaintiff] was required to resubmit his grievances under the normal procedure and complete the full three-stage process in order fully to exhaust available remedies." *Williams*, 957 F.3d at 832.

Plaintiff admits that his argument that he exhausted by appealing his emergency grievance directly to the ARB is contrary to Seventh Circuit cases following the 2017 amendment. *See* Pl. Br. at 12, Dkt. 37 (citing *Williams*, 957 F.3d at 832; *Fencel v. Cross*, 857 Fed. App'x. 869, 871 (7th Cir. 2021) (unpublished)). Nevertheless, Plaintiff attempts to distinguish these cases by arguing that they do not address the individual capabilities of an inmate with mental illness.

However, even considering Plaintiff's testimony that he suffered from mental illness, Plaintiff never testified that he did not understand the grievance procedures. Instead, he unequivocally testified that he understood each step of the grievance process. When Grievance 3785 was returned to Plaintiff, it specifically instructed him to "submit this grievance according to standard grievance procedure." Def. Ex. 2, at 2. Plaintiff testified after receiving this grievance, he understood that he needed to resubmit his grievance through the normal grievance process, noting that he has been instructed to do so in the past for grievances that were determined not to be an emergency. Accordingly, Plaintiff copied his emergency grievance onto another grievance form

12

and submitted it to his counselor. However, after the CAO's decision on the grievance, Plaintiff failed to appeal it to the ARB to complete the normal grievance process. Plaintiff failed to appeal despite testifying that he understood that the final step after receiving the CAO's decision was to appeal to the ARB. Moreover, Plaintiff's exhibits show that he successfully completed the grievance process in the past, both before and after he filed his grievances in this case. *See* Pl.'s Exs. 1–7. The Court finds that the record credibly establishes that Plaintiff understood that he was required to resubmit his grievance and complete the normal grievance process to fully exhaust his administrative remedies. As such, accounting for Plaintiff's individual capabilities, the Court finds by a preponderance of the evidence that administrative remedies were available to Plaintiff.

Based on the evidence presented at the *Pavey* hearing, this Court finds that Defendants have meet their burden to show that the grievance process was available to Plaintiff and that he failed to complete that process before filing suit on his underlying claims as required under the PLRA.

### IV. Conclusion

For the reasons stated above, it is this Court's report and recommendation that Defendants' request for dismissal of the complaint for failure to exhaust administrative remedies be granted and that Plaintiff's claims be dismissed without prejudice. Any objection to this report and recommendation must be filed by August 8, 2023. *See* Fed. R. Civ. P. 72(b). The failure to file a timely objection may result in the waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-61 (7th Cir. 1989).

Date: July 25, 2023　　　　　　　By: /s/ Lisa A. Jensen
　　　　　　　　　　　　　　　　　　　Lisa A. Jensen
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

13